_____

MOHAMMED MUSTAFA,

                            Plaintiff

-vs-

PHILIP C. POVERO, Ontario County Sheriff in his
Official and Individual Capacity, REBECCA L. BIRX,
Ontario County Sheriff in her Official Capacity and
Individually, ONTARIO COUNTY SHERIFF
DEPUTIES JOHN/JANE DOES 1-6 in their
Official Capacity and Individually,

                            Defendants

**DECISION AND ORDER**

15-CV-6714 CJS

_____

## INTRODUCTION

Mohammed Mustafa ("Plaintiff") maintains, *inter alia*, that Defendants falsely arrested him and subjected him to excessive force after they incorrectly suspected him of driving under the influence of alcohol or drugs. Plaintiff asserts claims under both 42 U.S.C. § 1983 and New York State law. Now before the Court is Defendants' pre-answer motion (Docket No. [#4]) to dismiss the action pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), or, alternatively, for summary judgment pursuant to Fed. R. Civ. P. 56. The motion for summary judgment is denied and the application to dismiss is granted in part and denied in part.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint [#1]. In that regard, in resolving a 12(b)(6) motion, a court is limited as to what it can consider. *See, Vasquez v.*

*City of New York,* No. 10 Civ. 6277(LBS), 2012 WL 4377774 at *1 (S.D.N.Y. Sep. 24, 2012). (On a 12(b)(6) motion, "a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (*quoting Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993)).").

Here, along with their motion to dismiss, Defendants submitted four documents that are extrinsic to the Complaint: 1) an affidavit from defendant Deputy Rebecca Birx ("Birx"); 2) an affidavit from David Tillman, Undersheriff of Ontario County; 3) a transcript of a 911 telephone call between the Ontario County 911 Operator and a citizen motorist; and 4) a transcript of a radio call between the 911 Operator and responding officers. Defendants maintain that the Court can consider these documents on a 12(b)(6) motion because the documents "are referenced in the Complaint, were in Plaintiff's possession prior to his filing the Complaint, or are public records."[1] Alternatively, Defendants indicate that if the Court is not willing to consider those documents on a 12(b)(6) motion, it should convert their motion to a summary judgment motion under Rule 56.[2] However, none of those four documents is incorporated in Plaintiff's Complaint, nor do Defendants explain how Plaintiff would have had any of them in his possession prior to filing his action.[3] Further, the

---

[1]Def. Memo of Law [#4-1] at p. 2, n. 1.

[2]Def. Memo of Law [#4-1] at p. 2, n. 1.

[3]Plaintiff commenced this action on November 25, 2015. Birx and Tillman did not execute their affidavits until January 5, 2016 and January 7, 2016, respectively, so Plaintiff obviously did not have the affidavits prior to commencing this action. Nor have Defendants claimed to have turned over the 911 trancripts prior to the commencement of this action. In any event, even assuming that Plaintiff had the documents prior to drafting the Complaint, Defendants would also have to show that Plaintiff relied on the documents when drafting the Complaint, which Defendants have not done.

documents are not of the type which the Court can take judicial notice. Moreover, the Court declines to convert the motion to one for summary judgment.

On the other hand, Plaintiff does not oppose the Court's consideration of these documents, and, in fact, asks the Court for permission to amend the Complaint to append these documents. *See*, Pl. Response [#18] at ¶ ¶ 51-52 ("Mustafa *moves to amend* his complaint to include the facts set forth in Tillman's and Birx's declaration[s] and the exhibits attached [t]hereto.") (emphasis in original).[4]  Accordingly, the Court will grant Plaintiff's request and deem the submissions (Docket Nos. [#4-2] & [#4-3]) to be attachments to the Complaint.[5]  Accordingly, the Court may consider the documents in connection with the subject 12(b)(6) motion.

On November 29, 2014, at approximately 6:00 p.m., the 911 Call Center in Ontario County received a telephone call concerning a car that "c[ould]n't stay on the road too well."[6] The citizen caller, who provided his name, address and telephone number, indicated that he was driving behind a dark colored car with Indiana license plates, which was not staying in its lane and driving well below the speed limit.[7]  The 911 Operator then made an announcement over the police radio, describing the vehicle and asking for an officer to check "for a sick or intox cellphone" [sic].  Ontario Sheriff's Car 108, which was apparently being operated by defendant Deputy Birx, located the car at the Valero gas station in

---

[4]Defendants oppose that request as being futile,  see, Defs. Reply [#20] at p. 8, but the Court does not agree that the amendment would be futile.

[5]Such amendment does not moot Defendants' motion.

[6]911 Call Transcript [#4-3] at p. 1.

[7]911 Call Transcript [#4-3] at p. 1 ("[H]e wasn't completely in the lane for a long ways and now, and now we're going 40 miles an hour in a 55.").

Canandaigua. Birx and other officers (John/Jane Does 1-6) pulled into the Valero parking lot to investigate.

When the officers arrived, Plaintiff was standing beside his car (a dark colored vehicle with Indiana plates) in the parking lot. Birx approached Plaintiff and demanded that he give her his car keys and driver's license. Plaintiff complied with the request. Birx then asked Plaintiff what he had eaten that day, whether he had been drinking, and whether he had taken any drugs. Plaintiff responded that he had consumed only food, water, and prescription medication that he took for diabetes and cholesterol. Birx then administered field sobriety tests including the "walk and turn test," "one leg test" and test to estimate passage of time. Plaintiff failed the sobriety tests.[8] Birx then pulled Plaintiff's arms behind his back, handcuffed him, placed him in the back of a police car, and transported him to the Sheriff's Station.

At the Sheriff's Station, Birx administered a breathalyzer test, which indicated that Plaintiff had not consumed alcohol. Birx then told Plaintiff that he would not be free to leave until a "specialist" examined him . Plaintiff asked why he was being detained, and Birx responded "that someone had called and said the [he] was drunk."[9] Plaintiff remained at the Sheriff's Station for approximately two hours, until a "specialist" arrived, who advised Plaintiff of his *Miranda* rights, and then re-administered field sobriety tests and a breathalyzer test. The breathalyzer test indicated that Plaintiff had not been drinking. Birx

---

[8]The Complaint does not specifically indicate whether Plaintiff passed or failed the field sobriety tests, but the reasonable inference is that he failed, since Birx arrested him immediately after he took the tests. This inference is further supported by the fact that the Complaint specifically alleges that Plaintiff passed the breathalyzer tets that were subsequently administered at the police station. Presumably, if Plaintiff had passed the field sobriety tests, the Complaint would have stated that fact.

[9]Complaint [#1] at ¶ 40.

eventually told Plaintiff that he was free to leave, and drove Plaintiff to the lot where his car had been towed. Plaintiff observed that his car had apparently been searched, as the contents were in disarray.

On November 25, 2015, Plaintiff commenced this action. The Complaint [#1] purports to assert nine[10] separate causes of action. The first four causes of action purport to state claims under 42 U.S.C. § § 1983 and/or 1985, while the remaining five claims purport to state tort claims under the common law of New York State. The four federal causes of action are: 1) false arrest, illegal search and seizure; 2) excessive force; 3) conspiracy to violate civil rights; and 4) *Monell* failure-to-train/supervise claim against the Ontario County Sheriff. The five state-law causes of action are: 1) battery; 2) assault; 3) intentional infliction of emotional distress ("IIED"); 4) negligent infliction of emotional distress; and 5) negligence. Plaintiff has not sued Ontario County directly, but has sued the individual defendants in their official and individual capacities.

On January 8, 2016, Defendants filed the subject motion, asserting that the Complaint should be dismissed for the following reasons: 1) the § 1983 official-capacity claims for money damages are barred; 2) the § 1983 claims fail to state plausible claims; 3) the individual defendants are entitled to qualified immunity; 4) the state-law claims are procedurally barred because Plaintiff did not comply with the notice-of-claim and pleading requirements of New York's General Municipal Law; and 5) the state-law causes of action

---

[10]The causes of action are numbered as follows: I, II, III, IV, V, VI, VIII, IX and X. There is no claim VII.

do not state plausible claims.[11]   On May 3, 2016, Plaintiff filed a response [#18] to the motion, and on May 12, 2016, Defendants filed a reply [#21].   On September 15, 2016, counsel for the parties appeared before the undersigned for oral argument.

## DISCUSSION

### The Motion to Dismiss Standard

Defendants maintains that Plaintiff's Complaint fails to state a claim upon which relief can be granted.   The general legal principles concerning motions under FRCP 12(b)(6) are well settled:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

---

[11]Defendants also argued that Plaintiff should be estopped from pursuing tort claims because he previously indicated, in a letter, that the incident was a mere "mistake."   However, the Court does not believe that this argument has sufficient merit to warrant discussion.

<u>The Official Capacity Claims Are Barred</u>

Defendants contend that the official capacity claims must be dismissed, and the Court agrees. The Complaint purports to sue all defendants in their individual and official capacities, seeking only money damages.[12] State officials can be sued in their official capacities for injunctive relief, but not for money damages. *See Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir.2009) (Observing that "*Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), holds that in a suit against state officials in their official capacities, monetary relief (unlike prospective injunctive relief) is generally barred by the Eleventh Amendment," though such immunity may be waived or abrogated in a particular case). In the instant case, Plaintiff is suing for money damages. Accordingly, the official-capacity claims are dismissed.

<u>The Conspiracy Claim is Dismissed</u>

Defendants also contend that the conspiracy claim must be dismissed, and the Court again agrees. The Complaint alleges, in conclusory fashion, that "Birx and Does 1-6" conspired to violate Plaintiff's constitutional rights.[13] However, "[c]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Corsini v. Nast*, No. 14–2207, 613 F. App'x 1, 3 (2d Cir. May 12, 2015) (citations omitted). Here, there are no factual allegations to plausibly suggest that anyone conspired to violate

---

[12]Complaint at ¶ 1 and "wherefore" clause." Plaintiff opposes this aspect of Defendants' motion by claiming that the Complaint demands declaratory relief as well as money damages, but that is incorrect.

[13]Complaint at ¶ ¶ 102-106.

Plaintiff's rights.  Accordingly, the conspiracy cause of action ("Count III") is dismissed.

<u>The § 1983 Claims Against Sheriff Povero Fail to Allege Personal Involvement</u>

The Complaint does not allege that Sheriff Povero was actually present during Plaintiff's arrest and detention.  Nevertheless, the pleading contends that Povero is liable under § 1983 for the alleged constitutional violations, based upon "negligent training, supervision and retention of [the defendant] deputies."[14]  However, Defendants contend that the pleading fails to allege sufficient personal involvement by Povero, and the Court agrees.

The applicable legal principles concerning supervisory liability under 42 U.S.C. § 1983 are well settled:

> Supervisor liability under § 1983 requires some personal involvement or responsibility and can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Guillory v. Cuomo*, No. 14–4569–pr, 616 F. App'x 12 (2d Cir. Sep. 29, 2015) (*citing Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir.2003)).

Of the five ways listed above for establishing supervisory liability under § 1983, the instant Complaint alleges personal involvement by Sheriff Povero under numbers (3) ("creation of policy or custom") and (4) ("grossly negligent supervision").  To sufficiently plead personal involvement through the creation of a "policy or custom," the pleading must

---

[14]Complaint at ¶ 1.

identify a particular policy or custom[15] that resulted in the Plaintiff's constitutional rights being violated. *See, Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.") (citations omitted).

With regard to pleading personal involvement through "grossly negligent supervision," the term

> "gross negligence" denotes a higher degree of culpability than mere negligence. It is the kind of conduct where the defendant has reason to know of facts creating a high degree of risk of harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk. ... The standard of gross negligence is satisfied where the plaintiff establishes that the defendant-supervisor was aware of a subordinate's prior substantial misconduct but failed to take appropriate action to prevent future similar misconduct before the plaintiff was eventually injured.

*Raspardo v. Carlone*, 770 F.3d 97, 116–17 (2d Cir. 2014) (citations and internal quotation marks omitted). Such gross negligence may also exist where a supervisor fails to train his subordinates. *See, Ryan v. Moss*, No. 11-CV-6015P, 2013 WL 956722, at *17 (W.D.N.Y. Mar. 12, 2013) ("Ryan offers conclusory allegations concerning Moss's purported failure to adequately train or supervise his subordinates regarding the use of excessive force. Such allegations, without facts to suggest that Moss's failure to train or supervise his subordinates was his deliberate choice or that he was aware of a specific deficiency in the training program, may not establish a basis for individual liability against Moss.") (citation omitted).

---

[15] "The policy or custom need not be memorialized in a specific rule or regulation. However, when discriminatory practices of city officials become 'persistent and widespread,' they may be considered to constitute a municipal custom or usage." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citations omitted).

In the instant case, the pleading makes only conclusory, boiler-plate allegations concerning Povero's creation of a policy and his alleged failure to supervise or train his subordinates. For example, the Complaint contends that "Defendant Birx and Does 1-6s' actions were part of the customary practices of the Ontario County Sheriff's Department." (Complaint at ¶ 87; see also id. at ¶ 96). Similarly, paragraphs 72-73 of the Complaint state:

> 72. Upon information and belief, Defendants Birx and Does 1-6 had inadequate training and supervision regarding arrests and reasonable use of force which led to constitutional and New York State law violations in this case.

> 73. Based on the foregoing, Defendants [sic] Povero failed to adequately train and supervise Defendants Birx and Does 1-6.

See also, e.g., Complaint ¶ ¶ 88, 97. The Complaint does not contain any factual allegations to plausibly suggest that Povero actually failed to supervise or train his employees, including Birx and John/Jane Does 1-6.

Instead, the Complaint merely alleges that because Birx and Does 1-6 violated Plaintiff's rights, Povero must have failed to properly supervise or train them. (See, e.g., Complaint at ¶ 108) ("By the actions described in paragraphs 1 through 106 above [concerning Plaintiff], Defendant Povero has demonstrated a policy, ordinance, custom, regulation and/or decision of deliberate indifference to the rights of Plaintiff and others[.]") (emphasis added). However, it is well-settled that such an assertion is insufficient to plead a plausible claim. See, Allen v. New York City Dep't of Envtl. Prot., 51 F. Supp. 3d 504, 519 (S.D.N.Y. 2014) ("[A]lleged discrimination suffered by Plaintiff alone is not sufficient to plead a policy or custom.") (collecting cases). Additionally, the Complaint fails to plausibly allege that Povero acted with the requisite state of mind. Instead, the pleading merely states that

Povero "was aware or should have been aware that his deputies . . . require special training . . . so as to not infringe upon the legal and constitutional rights of citizens, including Plaintiff." Complaint ¶ 75; *see also, id.* at ¶ 108 (Asserting conclusory allegations that Povero acted with deliberate indifference); ¶ 154 (conclusory allegation that Povero "learn[ed of his employees'] propensity to act in an unlawful and unauthorized manny by applying excessive physical force and psychological harm during encounters with other persons.").

Accordingly, the § 1983 claims against Povero in his individual capacity fail to allege personal involvement, and Counts I-IV are dismissed as against Povero.

<u>The State-Law Respondeat Superior Claims Against Povero Are Not Actionable</u>

The Complaint asserts that Povero, "as the Ontario County Sheriff," has respondeat superior liability for the state-law torts allegedly committed by Birx and John/Jane Does 1-6. *See*, Complaint, Counts V,VI, VIII, IX and X, and ¶ ¶ 119, 126, 135, 143). Defendants contend that, to the extent that Plaintiff is attempting to assert such liability against Povero personally, the claims are not actionable under New York law. The Court agrees. *See, D'Amico v. Corr. Med. Care, Inc.*, 120 A.D.3d 956, 959, 991 N.Y.S.2d 687, 692 (4th Dept. 2014) ("It is also well established that a Sheriff cannot be held personally liable for the acts or omissions of his deputies while performing criminal justice functions, and that this principle precludes vicarious liability for the torts of a deputy.") (citations omitted).

To the extent that Plaintiff is attempting to assert respondeat superior claims against Povero in his official capacity as Sheriff of Ontario County, which is a claim against Ontario County, Defendants contend that such claim must also be dismissed, since the County has not assumed such liability. On this point, Defendants cite *Villar v. County of Erie*, 126 A.D.3d 1295, 1296-1297, 5 N.Y.S.3d 747 (4th Dept. 2015), *Trisvan v. County of Monroe*, 26

11

A.D.3d 875, 876, 809 N.Y.S.2d 369 (4th Dept. 2006), and this Court's decision in *Miller v. County of Monroe*, No. 11-CV-6219, 2013 WL 2180738 (W.D.N.Y. May 17, 2013).

Defendants have correctly stated the law. As this Court observed in *Miller*, "it is well established that a county may not be held responsible for the negligent acts of the Sheriff and his deputies on the theory of respondeat superior, in the absence of a local law assuming such responsibility." *Miller*, 2013 WL 2180738, at *5 (citation omitted; collecting cases); *accord, Villar v. County of Erie*, 126 A.D.3d at 1296-1297 ("Defendant may not be held responsible for the negligent acts of the Sheriff and his deputies on the theory of respondeat superior, in the absence of a local law assuming such responsibility.") (citation omitted).

Here, the Complaint does not allege that Ontario County has passed a local law assuming respondeat superior liability for the acts of the Sheriff or his deputies. Nor, does Plaintiff's responding brief [#18] challenge this aspect of Defendants' motion in any way. Accordingly, the Complaint fails to state a respondeat superior claim against Povero in his capacity as Ontario County Sheriff. For all of the foregoing reasons, the state-law respondeat superior claims are dismissed.

<u>The State-Law Failure-To-Train/Supervise Claim Against Povero Is Not Actionable</u>

Count X of the Complaint alleges, *inter alia*, that Povero negligently failed to train and supervise Birx and John/Jane Does 1-6. However, Defendants contend that such claims are not actionable under New York law, and the Court agrees.[16] Recently, this Court stated the applicable New York law as follows:

---

[16]Plaintiff's response [#18] does not address this aspect of Defendants' motion.

12

> [W]here the acts of 'employees' are concerned, an employer can be held
> vicariously liable under principles of respondeat superior for acts committed
> within the scope of the employee's employment, or may be held directly liable
> for 'negligent hiring, retention, or supervision' for acts committed outside that
> scope.

*Ben v. United States*, 160 F. Supp. 3d 460, 476–77 (N.D.N.Y. 2016) (Siragusa, J. as acting Judge of the Northern District)(quoting *Williams v. Boulevard Lines, Inc.*, No. 10 CIV. 2924 DF, 2013 WL 1180389, at *13, n. 10 (S.D.N.Y. Mar. 12, 2013) (citations omitted)).

In the instant case, the Complaint clearly alleges that Birx and John/Jane Does were acting within the scope of their employment at all times. *See, e.g.*, Complaint at ¶ 13 ("At all times material to the allegations in this Complaint, Defendants Birx, Does 1-6 and Povero were acting in their capacities as deputy sheriffs and Sheriff respectively[.]"); *see also, id.* at ¶ 16 ("At times herein relevant, Birx, Does 1-6 and Povero were acting within the course and scope of their duties in the performance of the acts herein alleged."); *id.* at ¶ 119 ("Birx and Does 1-6 who were purporting to act or were acting in the course and scope of their employment."); ¶ ¶ 126, 135, 143. Accordingly, the negligent training/supervision claim against Povero must be dismissed. *See, e.g., Malay v. City of Syracuse*, 151 A.D.3d 1624, 57 N.Y.S.3d 267, 269 (4th Dept. 2017) ("[T]he cause of action concerning negligent supervision and training was properly dismissed inasmuch as such a cause of action does not lie where, as here, the employees are acting within the scope of their employment[.]") (citation omitted).

<u>The Section 1983 Claims May Proceed Against Birx and Does 1-6,</u>
<u>Except for the Excessive Force Claim</u>

Defendants contend that the Complaint fails to state actionable § 1983 claims against Birx and John/Jane Does 1-6, for false arrest, false imprisonment and improper search and seizure. In that regard, Defendants note that according to the Complaint in this action, they detained and arrested Plaintiff, and then searched his car, "without probable cause or reasonable suspicion that a crime had been committed." *See, e.g.*, Complaint at ¶ 82. However, Defendants contend that they had reasonable suspicion to detain Plaintiff in the first place, which then developed into probable cause after he failed the field sobriety tests. Defendants contend that they are entitled to dismissal of these claims as a matter of law, or, alternatively, that they are entitled to qualified immunity.

Defendants' arguments on this point all rest on the same premise: That the information provided by the citizen who called the 911 operator, concerning Plaintiff's erratic driving, was later relayed, by the 911 operator, to Birx.[17]  Such information, Defendants maintain, provided reasonable suspicion for Birx to administer sobriety tests, the results of which then provided probable cause to arrest Plaintiff. *See*, Defs. Memo of Law [#4-1] at p. 10 ("The 911 caller's and Deputy Birx's observations alone were enough to support an arrest for common law driving while intoxicated.").  More particularly, Defendants argue as follows:

> "Reasonable suspicion can be based solely on an informant's tip if there is sufficient indicia of reliability' under a 'totality of the circumstances' test." *U.S. v. Rivera*, 353 Fed.Appx. 535, 536 (2d Cir. 2009).  . . .  Here, the private citizen whose information led to Plaintiff's stop relayed his first-hand observation of Plaintiff's erratic driving to the 911 dispatcher, and continued to do so as Plaintiff proceed south on Main Street through Canandaigua.  He

---

[17]*See*, Defs. Memo of Law [#4-1] at pp. 8-11, 18-19.

described Plaintiff's vehicle, including the license plate number. The caller also gave the 911 operator his name, address and phone number, providing additional veracity to his report. Given these circumstances, the offers were well justified in stopping Plaintiff to determine whether his dangerous driving was the result of him being ill or intoxicated.

Defs. Memo of Law [#4-1] at p. 8 (citations omitted); *see also*, Def. Reply [#20] at p. 2 ("[G]iven the 911 caller's report of Plaintiff's prolonged erratic driving, Deputy Birx was justified in performing the field sobriety tests, and arresting Plaintiff when he failed all five of them.").

However, the 911 call transcript does not support Defendants' argument. Most notably, the transcript does not indicate that the 911 operator conveyed to Birx the information that was provided by the citizen informant. Rather, the transcript indicates that after speaking to the citizen informant by telephone, the 911 operator merely used the police radio to describe Plaintiff's car, and to ask for an officer in the vicinity to check for a "sick or intox" driver. Neither does Birx's affidavit indicate that the 911 operator relayed all of the aforementioned information provided by the citizen caller. Instead, Birx merely indicates that she "heard a transmission from the Ontario County 911 dispatcher regarding a potentially six or intoxicated driver."[18] Defendants do not contend that this information by itself would have been sufficient to justify Birx's initial stop of Plaintiff. Accordingly, Defendants' motion to dismiss the § 1983 false arrest, false imprisonment and improper search and seizure

---

[18]Birx Aff. [#4-2] at ¶ 2. There is an interesting but unexplained entry in the transcript, in which the officer in "Car 108," which was presumably Birx, states, "I'm speaking with the caller right now." (Docket No. 4-3] at p. 8). This entry seems to suggest that the citizen who reported Plaintiff's erratic driving remained at the scene when Plaintiff pulled into the Valero gas station, and remained there until Birx arrived, and spoke directly to Birx. If so, he presumably would have relayed the same information to Birx that he gave to the 911 operator. However, regardless of what the transcript suggests, such information is not contained in Birx's affidavit.

claims against Birx and Does 1-6 is denied.

Defendants also contend that the § 1983 excessive force claim is deficient as a matter or law, because it is conclusory and does not allege that Plaintiff endured more than *de minimis* force. Defendants argue that while the Complaint asserts that Birx "violently" pulled Plaintiff's arms behind his back to handcuff him, and then "violently" pushed him into the back of a police car, the pleading is deficient as a matter of law, because it does not claim that Plaintiff experienced pain, and admits that he did not seek medical attention until two days later.

Plaintiff responds that the force used was necessarily excessive, because the officers had no probable to cause to think that he was committing a crime.[19] Plaintiff further contends that he offered no resistance to Birx, and that the application of force was objectively unreasonable, or that there are at least triable issues of fact concerning the reasonableness of such force.

Excessive force claims raised in the context of an arrest are analyzed under the Fourth Amendment, and must allege conduct that is "sufficiently serious to reach constitutional dimensions;" the alleged injuries "need not be severe or permanent, but they must be more than *de minimis*." *Hays v. City of New York*, No. 14-CV-10126 (JMF), 2017 WL 782496, at *5 (S.D.N.Y. Feb. 28, 2017) (citations and internal quotation marks omitted).

Preliminarily, to the extent that Plaintiff is arguing that any use of force is *necessarily* excessive where there is no probable cause to arrest, he is incorrect. *See, Morse v. Fitzgerald*, No. 10-CV-6306 CJS, 2013 WL 1195036, at *9 (W.D.N.Y. Mar. 22, 2013) ("[T]he

---

[19]Pl. Response [#18] at p. 9, ¶ ¶ 68-69; p. 11 at ¶ ¶ 81-83.

fact that Plaintiff's arrest may have been unlawful does not establish, *per se*, that the force used against him was excessive.") (*citing Jones v. Parmley*, 465 F.3d 46, 62 (2d Cir.2006)). Rather, even assuming that there was no probable cause to arrest, the issue is still whether the use of force was reasonable under the circumstances. *Id*.

Moreover, the Court agrees with Defendants that the excessive force allegations are too conclusory to state a plausible claim. On this point, the Complaint merely contends that Plaintiff was handcuffed and placed in a patrol car "violently," which is insufficient to state a plausible claim of constitutional dimensions. *See, e.g., Pierre v. City of New York*, No. 12 CIV. 9462 LAK GWG, 2014 WL 56923, at *9 (S.D.N.Y. Jan. 7, 2014) ("Pierre does not make allegations showing that arresting officers used any significant force whatsoever. His assertions of being arrested 'with excessive force' or in an 'aggressive' manner are mere 'labels and conclusions,' and thus cannot overcome a motion to dismiss.") (citation omitted). Further, the Complaint vaguely suggests that Plaintiff suffered some injury, but fails to identify the injury or explain how it was caused by the act of handcuffing him and placing him in the patrol car. *See, Corsini v. Bloomberg*, 26 F. Supp. 3d 230, 243 (S.D.N.Y. 2014) ("Here, Plaintiff has alleged merely that he complained that the handcuffs were too tight and that he suffered 'physical injury,' without specifying any factual content about the injury. This conclusory allegation of injury is insufficient to plead . . . a viable handcuffing-related claim of excessive force.") (footnote omitted), *aff'd in part, appeal dismissed in part sub nom. Corsini v. Nast*, 613 F. App'x 1 (2d Cir. 2015). Accordingly, the excessive force claim is dismissed for failure to state a plausible claim.

<u>Defendants Have Not Shown That A Notice of Claim Was Required</u>

Defendants further contend that all of Plaintiff's state-law claims are procedurally barred, because Plaintiff did not file a notice of claim within ninety days, as required by New York General Municipal Law § 50-e. *See*, Defs. Memo of Law [#4-1] at p. 21 ("[N]o such notice was served, far more than 90 days have elapsed since Plaintiff's arrest, and Plaintiff has not alleged compliance with the notice of claim statute. Accordingly, Counts V through X should be dismissed."). Plaintiff's response [#18] does not address this argument.

In New York State, one cannot sue a county in tort without first complying with the requirements of General Municipal Law § § 50-e and 50-i.[20] Pursuant to § 50-e, if a plaintiff intends to sue a county, he must first serve a notice of claim on the county, but if he intends to sue only a county employee and not the county itself, he is not required to serve the county, unless the county has a statutory obligation to indemnify the employee. Gen. Mun. L. § 50-e[1][a]&[b]; *see also, Brooks v. Cty. of Nassau*, 54 F. Supp. 3d 254, 258 (E.D.N.Y. 2014) ("It is well settled that the failure to file a notice of claim bars state claims against individual defendants sued in their official capacities.") (citations omitted).

However, counties in New York are not necessarily required to indemnify their sheriffs or sheriff's deputies. *See, e.g.*, *Villar v. Howard*, 28 N.Y.3d at 78-80(Notice of claim was not required to sue sheriff, because county did not have statutory obligation to indemnify sheriff); *see also*, *Rew v. County of Niagara*, 73 A.D.3d 1463, 1464, 901 N.Y.S.2d 442, 443 (4th

---

[20]*See*, County Law § 52[1] ("Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature, and whether casual or continuing trespass or nuisance and any other claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in compliance with section fifty-e of the general municipal law. Every action upon such claim shall be commenced pursuant to the provisions of section fifty-i of the general municipal law.")

Dept. 2010) (Discussing, *inter alia*, whether, under the facts of the case, the county had a duty to indemnify a sheriff's deputy).

Here, Defendants' brief does not specifically address the applicability of the notice-of-claim provisions to the Sheriff and his deputies. However, in connection with a different argument, such brief states as follows:

> [T]he County (or Sheriff Povero in his official capacity) cannot be held liable for the deputies' acts, absent a local law assuming such liability. *Villar v. County of Erie*, 126 A.D.3d 1295, 1296-1297 (4th Dept. 2015); *Trisvan*, 26 A.D.3d at 876. This Court recognized this rule in *Miller*, 2013 U.S. Dist. LEXIS 70467 at 13-14. However, Plaintiff has not alleged the existence of any such local law, and he cannot do so because none exists.

Defs. Memo of Law [#4-1] at p. 17. Therefore, it appears that Ontario County does not have a statutory duty to indemnify the defendants, which would obviate the need for a notice of claim. In any event, at this juncture Defendants have not demonstrated their entitlement to dismissal of the state-law claims based upon a failure to serve a notice of claim, and accordingly this aspect of their motion is denied.

<u>The Negligence Claims Are Not Actionable</u>

Defendants alternatively contend that the negligence claims must be dismissed because they pertain to the performance of governmental functions, and no special relationship existed between themselves and Plaintiff. It appears that Defendants have correctly delineated the law of New York on this point, which is as follows:

> New York Courts have long followed the rule that an agency of government is not liable for the negligent performance of a governmental function unless there existed a special duty to the injured person, in contrast to a general duty owed to the public. Accordingly, under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest

or initiating a prosecution.  A plaintiff seeking relief from injuries flowing from an arrest, investigation, or prosecution is instead limited to the traditional intentional tort remedies of false arrest, false imprisonment, and malicious prosecution.

*Sullivan v. Lakeram*, No. 13 CIV. 7677 (NRB), 2016 WL 4097856, at *4 (S.D.N.Y. July 28, 2016) (citations omitted).

Plaintiff's response does not address this aspect of Defendants' motion.  Nor does the Complaint allege the existence of any special duty owed to Plaintiff by Defendants.  On the other hand, the claims clearly appear to involve the type of discretionary governmental functions that are covered by rule set forth above.  Accordingly, Plaintiff's negligence claims, including the claim for negligent infliction of emotional distress (Counts IX & X), are dismissed.

<u>The Claim for Intentional Infliction of Emotional Distress Is Not Actionable</u>

Defendants next contend that the IIED claim (Count VIII) fails to state an actionable claim, because such claims are "highly disfavored," and because the Complaint does not allege sufficiently "extreme and outrageous" conduct by Defendants.  In this regard, it is well settled that "[u]nder New York law, to prove a claim of intentional infliction of emotional distress, a plaintiff must establish (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Noonan v. New York City Police Dep't Officer Carlos Becker*, No. 14 CV 4084-LTS-JLC, 2017 WL 3638201, at *5 (S.D.N.Y. Aug. 23, 2017) (*citing Bender v. City of N.Y.*, 78 F.3d 787, 790 (2d Cir. 1996)).

Plaintiff admits that IIED claims are "highly disfavored," but nevertheless suggests that "Birx's conduct towards Mustafa was more than likely because Mustafa was obviously

Arabic and a Muslim who hardly spoke or understood English."[21]  However, such statement is completely unsupported by any factual averment plausibly suggesting that Plaintiff was actually targeted for arrest because of his ethnic background.  Much to the contrary, the record strongly suggests that Plaintiff was questioned because he was driving erratically, and arrested because he failed the sobriety tests, regardless of whether Defendants had the requisite probable cause.  But in any event, the allegations in the Complaint do not even remotely approach the level of extreme and outrageous conduct required to support an IIED claim.  Accordingly the IIED claim is dismissed.

<u>The Assault and Battery Claims Must Be Dismissed</u>

Lastly, Defendants contend that the state-law assault and battery claims must be dismissed.  More particularly, Defendants state that, "[a]s a matter of law, no civil assault or battery claim may arise from an arrest without excessive force."[22]  Plaintiff responds with certain arguments regarding his assault and battery claims, but does not address the precise argument raised here by Defendants.

Defendants are correct in asserting that when state-law assault and battery claims arise from an arrest by a police officer, they essentially mirror a 4th Amendment excessive force claim. *Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. Sep. 1. 2009) ("Except for § 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims are substantially identical.") (citation and internal quotation marks omitted).  Moreover, since Plaintiff's assault and battery claims are based upon the very same conduct, and factual averments, on which

---

[21]Pl. Memo of Law [#18] at p. 21.

[22]Defs. Memo of Law [#4-1] at p. 25.

the excessive force claim was based, they must be dismissed for the same reasons that the Court is dismissing the excessive force claim. *See, e.g., Hays v. City of New York*, No. 14-CV-10126 (JMF), 2017 WL 782496, at *5 (S.D.N.Y. Feb. 28, 2017) ("Hays's state law claims based on the same incidents—for assault and battery . . . must also be dismissed. . . . [H]er assault and battery claims fail for the same reasons as her excessive force claims.") (citation omitted); *see also, B. v. City of New York*, No. 14-CV-1021 (KAM)(PK), 2016 WL 4530455, at *12 (E.D.N.Y. Aug. 29, 2016) ("Plaintiff S.B. brings an excessive force claim arising out of the April 7, 2012 incident, but provides no factual detail regarding any officer's use of force. S.B.'s federal excessive force claim and related state law assault and battery claims are therefore dismissed.") (citation to record omitted).

## CONCLUSION

The Complaint is deemed amended, to include Docket Nos. [#4-2] & [#4-3] as attachments. Defendants' motion [#4] to dismiss the Complaint, as amended, is granted in part and denied in part. The § 1983 false arrest and improper search and seizure claims may proceed as against Birx and John/Jane Does 1-6. Otherwise, the claims in the Complaint, including all claims against Povero, are dismissed. The Clerk of the Court is directed to terminate Povero as a party to this action. Defendants shall file and serve an answer within 21 days after this Decision and Order is filed.

SO ORDERED.

Dated:     Rochester, New York
           September 19, 2017

                                ENTER:

                                /s/ Charles J. Siragusa
                                CHARLES J. SIRAGUSA
                                United States District Judge

22